**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JIHONG WANG, QI LI, LES AKIO OMORI,
and ALAN BECK, individually and on behalf
of all others similarly situated,

             Plaintiffs,

             v.

CHINA FINANCE ONLINE CO. LIMITED,

             Defendant.

Case No.:  1:15-CV-07894-RMB

---

## STIPULATION OF SETTLEMENT

WHEREAS, on June 5, 2015, this securities class action was filed against China Finance Online Co. Limited and two of its officers (Zhiwei Zhao and Jun Wang) by plaintiff Thuc Pham in the United Stated District Court for the Central District of California alleging violations of the Securities Exchange Act of 1934; and

WHEREAS, on September 14, 2015, the California Court[1] appointed Jihong Wang, Qi Li and Les Akio Omori Lead Plaintiffs and their counsel, The Rosen Law Firm, P.A.,  Lead Counsel; and

WHEREAS, on October 5, 2015, upon a joint stipulation by the parties, the California Court transferred the Action to the United States District Court for the Southern District of New York and directed Lead Plaintiffs to file an amended complaint with the Court by October 19, 2015, which deadline was extended by this Court to October 27, 2015; and

---

[1]      Capitalized terms set out in this Stipulation of Settlement have the meanings as ascribed to them in Section I.A.

WHEREAS, on October 27, 2015, Lead Plaintiffs, along with named Plaintiff Alan Beck, filed a Consolidated Class Action Complaint for Violation of the Securities Laws against CFO, Zhiwei Zhao and Jun Wang, former directors Rongquan Leng, Neo Chee Beng and Kheng Nam Lee, and CFO's former and current outside auditors Grant Thornton (China) and BDO China Su Lun Pan Certified Public Accountants LLP; and

WHEREAS, on December 28, 2015, after leave to file was granted by the Court at a November 23, 2015 hearing, Plaintiffs filed an Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws (the "Complaint") against the same parties on behalf of a class consisting of all persons and entities who purchased or otherwise acquired CFO ADSs between April 29, 2013 and June 3, 2015; and

WHEREAS, on January 13, 2016, the Court held a conference at which it required CFO to provide the last known addresses for its former directors, stayed all other discovery, denied CFO's request for leave to file a motion to dismiss (without prejudice to renew such request once all named defendants were served) and scheduled a status conference for July 11, 2016 to consider the status of service on the individual and auditor defendants; and

WHEREAS, on February 15, 2016, Plaintiffs filed a notice of voluntary dismissal without prejudice of defendants Zhao, Wang, Leng, Beng, Lee, Grant Thornton and BDO, which dismissal the Court granted on March 9, 2016; and

WHEREAS, on April 8, 2016, CFO filed a Motion to Dismiss the Complaint; and

WHEREAS, on May 6, 2016, Plaintiffs filed their Memorandum of Law in Opposition to the Motion to Dismiss and on May 13, 2016, CFO filed its Reply Memorandum of Law in Support of its Motion to Dismiss; and

WHEREAS, on May 18, 2016, the parties attended a mediation session before The Hon. Faith S. Hochberg, U.S.D.J. (Ret); and

WHEREAS, prior to the Mediation, the parties provided to the Mediator the Complaint, their briefs in support of and in opposition to Motion to Dismiss the Complaint and mediation statements setting out supplemental and non-public information relevant to the parties' positions; and

WHEREAS, at the Mediation, Lead Counsel, counsel for CFO, and representatives of CFO's directors' and officers' liability insurers reached an agreement in principle to recommend to their respective clients a proposed settlement of the Action, subject to approval by their clients, execution of a formal settlement agreement, and approval by the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4; and

WHEREAS, throughout the pendency of the Action and the Settlement negotiations, Lead Plaintiffs and Defendant have been advised by various consultants and experts, including individuals with expertise in estimating potential damages in cases involving allegations of securities law violations, and by competent counsel with experience in securities lawsuits such as this Action; and

WHEREAS, based upon Lead Counsel's investigation and evaluation of the facts and law relating to the claims alleged in this Action, Lead Counsel's pre- and post-filing investigations, Lead Counsel's consultation with experts, and the Additional Information provided to Lead Plaintiffs after the Settling Parties reached an agreement in principle, Plaintiffs and Lead Counsel have agreed to settle the Action and release the Releasees as to the Released Class Members' Claims pursuant to the terms of this Settlement Agreement after considering, among other things:

(*i*) the substantial benefits that the terms of the proposed Settlement would provide to Class Members; (*ii*) the attendant risks of litigation, especially in complex actions such as this one in which, among other things, the vast majority of the evidence, as well as the knowledgeable witnesses, will be in located in China; (*iii*) the defenses available to Defendant; (*iv*) the difficulties and delays inherent in such litigation, including the difficulty of enforcing any judgment the Lead Plaintiffs might obtain against a Hong Kong company whose assets (which are principally located in China) are substantially held by of certain Chinese operating companies owned by third parties over whom CFO exercises contractual control **[note: we are confirming with CFO about this description of their assets]**; (*v*) the desirability of consummating this Settlement Agreement promptly to provide effective relief to Class Members; and (*vi*) Lead Plaintiffs' and Lead Counsel's belief that the proposed Settlement is fair, reasonable and adequate and in the best interests of Class Members; and

WHEREAS, Defendant expressly denies the wrongdoing alleged in this Action and does not concede any wrongdoing or liability in connection with any facts or Claims that have been, could have been or could be alleged in the Action, it nevertheless considers it desirable for the Action to be settled and dismissed because the proposed Settlement would, among other things: (*i*) bring to an end the substantial expense, burdens, and uncertainties associated with continued litigation of the Claims asserted in this Action; (*ii*) finally put to rest those Claims and the underlying matters; and (*iii*) confer substantial benefits upon CFO, including avoidance of further disruption of the management and operation of its business due to the pendency and defense of the Action; and

WHEREAS this Settlement Agreement, the offer of this Settlement Agreement, and compliance with this Settlement Agreement shall not constitute or be construed to be an

4

admission by Defendant or the other Releasees, or any of them individually, of any wrongdoing or liability; and

WHEREAS, except as otherwise provided in this Settlement Agreement, this Settlement Agreement shall not be admissible in any judicial, administrative, or other proceeding or cause of action as an admission of liability or for any purpose other than to enforce the terms of this Settlement Agreement.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the undersigned, including Lead Plaintiffs (individually and in their representative capacities) and Defendant, by and through their duly authorized counsel, that, subject to the Court's approval and such approval becoming Final, (*i*) the Action and the matters raised in it are hereby settled and compromised as to Defendant and (*ii*) the Action will be dismissed on the merits and with prejudice as to Defendant based upon the terms and conditions set forth in this Settlement Agreement, including, among other things, that, as set out in the Release, the Released Class Members' Claims will be released as to the Releasees and the Released Releasees' Claims will be released as to the Releasors.

I.      **DEFINITIONS**

A.      As used in this Settlement Agreement, the following terms have the meanings set forth herein:

1.      "Action" means the putative securities class action originally filed in the California Court as *Thuc Pham v. China Finance Online Co. Limited, et al.*, that is currently pending in the Court under the caption *Wang, et al. v. China Finance Online Co. Limited*, No. 1:15-Civ-07894-RMB, including any other cases that might be consolidated into that action as of the Final Settlement Date.

2.      "Additional Information" means the additional factual information that Defendant provided to Plaintiffs after an agreement in principle was reached.

3.      "ADSs" means American Depositary Shares.

4.      "Affiliate" or "Affiliated" means such persons or entities as are defined in 17 C.F.R. Part 210.1-02(b).

5.      "AIC" means the provincial and municipal offices to which SAIC has delegated responsibility for maintaining the company register for China.

6.      "Approval Order" means the order to be entered by the Court approving the Settlement and dismissing the Complaint and all Claims in the Action as contemplated in Section XII of this Settlement Agreement, which order the Settling Parties shall ask the Court to enter substantially in the form set out as Exhibit B.

7.      "Attorneys' Fees Award" means that portion of the Attorneys' Fees and Expenses Award that awards attorneys' fees to Lead Counsel.

8.      "Attorneys' Fees and Expenses Application" means the motion for fees and expenses to be made by Lead Counsel as set out in Section IX, below.

9.      "Attorneys' Fees and Expenses Award" means the amount(s) that the Court awards to Lead Counsel to compensate it for its fees and expenses in connection with investigating, prosecuting and/or settling the Action, as provided for in Section IX, below.

10.     "Authorized Claimant" means a Class Member (or the representative of such Class Member, including agents, administrators, executors, heirs, predecessors, successors, Affiliates, or assigns) whose claim for recovery from the settlement fund has been allowed pursuant to the terms of this Settlement Agreement.

11.     "Beijing Bluestone" means Beijing Bluestone Investment Management

Co. Limited.

12.    "Business Day" means a day other than a Saturday, Sunday or Legal Holiday.

13.    "CAFA" means the Class Action Fairness Act, 28 U.S.C. § 1332(d).

14.    "California Court" means the United States District Court for the Central District of California.

15.    "CFO" means the Hong Kong-incorporated company China Finance Online Co. Limited.

16.    "CFO Securities" means any CFO securities, including any ADSs.

17.    "Claim" or "Claims" means any and all actions, causes of action, proceedings, adjustments, executions, offsets, contracts, judgments, obligations, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, variances, covenants, trespasses, damages, demands (whether written or oral), agreements, promises, liabilities, controversies, costs, expenses, attorneys' fees, and losses whatsoever, whether in law, in admiralty, or in equity, and whether based on any United States federal,  state or common law right of action or foreign statutory or common law right of action or otherwise, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, existing now or to be created in the future, including Unknown Claims.

18.    "Claim Form" means the form, as approved by the Court, that shall be included in mailings and distributions of the Individual Notice to potential Class Members and that Class Members will use to submit claims under the procedures set out in this Settlement Agreement; provided that the Settling Parties shall ask the Court to approve the claim form substantially in the form set out as Exhibit F.

19.     "Claims Administrator" means, subject to Court approval and appointment in the Preliminary Approval Order, Strategic Claims Services, Inc.

20.     "Class" or "Class Members" means, for purposes of this Settlement, all persons, entities, or legal beneficiaries or participants in any entities who, during the Class Period, purchased or otherwise acquired CFO ADSs.  Excluded from the Class are:

a.     such persons or entities who submit valid and timely requests for exclusion from the Class;

b.     such persons or entities who, while represented by counsel, settled an actual or threatened lawsuit or other proceeding against one or more of the Releasees and released all of the Releasees from any further Claims arising out of or related to their purchase or other acquisition of CFO ADSs during the Class Period;

c.     Dismissed Defendants, officers or directors of CFO at all relevant times; Family Members of any of the foregoing, and their legal representatives, heirs, successors, or assigns; and any entity in which any of the Releasees has or had a Controlling Interest.

21.     "Class Period" means the period of time from April 29, 2013 through June 3, 2015, inclusive.

22.     "Complaint" means the Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws filed in the Action on December 28, 2015.

23.     "Complete Bar Order" means the order, the text of which is set forth in Section 15 of the Approval Order (Exhibit B).

24.     "Confidentiality Order" means the Confidentiality Agreement entered into by Plaintiffs and CFO pursuant to which Additional Information was provided to Plaintiffs, a copy of which is attached as Exhibit G.

25.     "Controlling Interest" means an interest in an entity where such interest is sufficient to allow the interest holder directly or indirectly to direct or cause the direction of the management and policies of the entity, whether through the ownership of voting shares, by contract or otherwise.  Any disputes as to whether CFO or any other Releasee has a Controlling Interest in an entity or whether an entity has a Controlling Interest in CFO or any other Releasee shall, solely for purposes of determining whether a Controlling Interest exists under this Settlement Agreement, be submitted to the Mediator for final, binding resolution, and the party claiming that the interest is a Controlling Interest shall bear the burden of proof as to whether or not the interest is or was a Controlling Interest for purposes of this Settlement Agreement.

26.     "Court" means the United States District Court for the Southern District of New York.

27.     "Defendant" means CFO.

28.     "Defendant's Counsel" means Proskauer Rose LLP.

29.     "Dismissed Defendants" means Zhiwei Zhao, Jun Wang, Rongquan Leng, Neo Chee Beng, Kheng Nam Lee, Grant Thornton (China) and BDO China Su Lun Pan Certified Public Accountants LLP.

30.     "Distribution Date" means the date on which the Claims Administrator mails the initial distribution of the Net Settlement Fund to Authorized Claimants.

31.     "Escrow Account" means the account described in Section II.B.1 into which the Settlement Amount shall be paid, which account shall be treated for tax purposes as a Qualified Settlement Fund, as described below.

32.     "Escrow Agent" means Lead Counsel, which shall act as escrow agent for the Escrow Account.

33.     "Exchange Act" means the Securities Exchange Act of 1934, as amended.

34.     "Execution Date" means the date by which this Settlement Agreement has been executed by all Settling Parties.

35.     "Expenses Award" means that portion of the Attorneys' Fees and Expenses Award that awards out-of-pocket expenses to Lead Counsel.

36.     "Fairness Hearing" means the hearing at or after which the Court will make a final decision, pursuant to Fed. R. Civ. P. 23, as to whether this Settlement Agreement is fair, reasonable and adequate to settle the Class Members' Claims against Defendant and the other Releasees and whether the Court should approve the proposed Settlement.

37.     "Family Members" means an individual's father, mother, grandfather, grandmother, sister, brother, spouse/partner, son and/or daughter, and any person living in, or a member of, an individual's household.

38.     "Final" means, when used in connection with any court order or judgment, that the relevant order or judgment will be final:

   a.     if no appeal is taken therefrom, on the date on which the time to appeal therefrom (including any potential extension of time) has expired;

   b.     if any appeal is taken therefrom, on the date on which all appeals therefrom – including petitions for rehearing or reargument, petitions for rehearing en banc, petitions for certiorari or any other form of review, and any related appeals or petition, including as to any appeal bond – have been finally disposed of, such that the time to appeal therefrom (including any potential extension of time) has expired, in a manner resulting in an affirmance of the relevant order or judgment.

39.     "Final Settlement Date" means the date on which the Approval Order and

the Judgment become Final.

40.     "Individual Notice" means the notice, as approved by the Court, described in Section III.A and in the Preliminary Approval Order that Lead Counsel will cause the Claims Administrator to disseminate to potential Class Members informing them of the Settlement contemplated by this Settlement Agreement, which notice the Settling Parties shall ask the Court to approve substantially in the form set out as Exhibit D.

41.     "Investment Decision" means any decision regarding an investment in CFO Securities, during the Class Period, including a decision to hold CFO ADSs during the Class Period.

42.     "Judgment" means the Judgment entered by the Court as contemplated in Section XII of this Settlement Agreement, which Judgment the Settling Parties shall ask the Court to enter substantially in the form set out as Exhibit C.

43.     "Langfang" means Langfang Shengshi Real Estate Development Co. Limited, a real estate developer operating in China.

44.     "Lead Counsel" means the Rosen Law Firm, P.A.

45.     "Lead Plaintiffs" mean Jihong Wang, Qi Li and Les Akio Omori, in their individual capacity and as representatives of the Class.

46.     "Legal Holiday" means New Year's Day, the observance of the Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day designated as a federal, New York state or Chinese holiday.

47.     "Mediator" means retired United States District Judge Faith Hochberg or, if she is unavailable, someone of similar stature upon whom the Settling Parties agree.

48.     "Net Settlement Amount" means the balance remaining in the Escrow Account (including any interest that has accrued, less Tax Expenses paid or owing) after payments of the Notice and Administrative Expenses, the Attorneys' Fees and Expenses Award, and the Service Awards have been made.

49.     "Nominees" means brokerage firms, banks and other institutions that hold CFO ADSs in street name or other similar fashion for the benefit of other persons or entities.

50.     "Notice and Administrative Expenses" means all expenses associated with the administration of the Settlement contemplated by this Settlement Agreement, including the Claims Administrator's fees and expenses and all other fees and expenses associated with: (i) printing and sending the Individual Notice to potential Class Members; (ii) publishing the Summary Notice; (iii) assisting Class Members with filing Claim Forms; (iv) processing Claim Forms, (v) setting up and maintaining a toll-free telephone number for potential Class Members to call and (vi) distributing the Net Settlement Amount; provided however, that Notice and Administrative Expenses shall not include the Attorneys' Fees and Expenses Award.

51.     "Notice Program" means the program for informing potential Class Members about the proposed Settlement, including the Individual Notice, the Claim Form, the Summary Notice, and the manner of delivering and publishing such notices or forms.

52.     "Operative Facts" means those facts and circumstances that provide the factual predicate for the claims asserted in the Action and shall include, among other things:

a.      CFO's transactions with Langfang, including its investment in Langfang, its transfer of its investment in Langfang, its loans to Langfang, its collection efforts relating to any such transactions and the repayment of any moneys to CFO relating to any such transactions [*e.g.*, Complaint ¶¶ 6-7, 13-15, 18, 67-74, 79-82, 96-99, 111-13];

b.      CFO's direct or indirect relationships with, or the direct or indirect relationships of any of CFO's current or former officers, directors or employees (including through equity holdings or management roles) with, Beijing Bluestone or companies Affiliated with Beijing Bluestone, Langfang, Zhao or Ling Wang [*e.g.*, Complaint ¶¶ 7, 19, 41, 44, 82, 94, 96-97, 103-04, 122-23];

c.      The direct or indirect relationship between Zhao and former CFO director Ling Wang, including any companies or businesses in which they were both involved [*e.g.*, Complaint ¶¶ 8, 38-46, 78, 94-95, 103-04, 122-23];

d.      CFO's direct or indirect relationships with, or the direct or indirect relationships of any of CFO's current or former officers, directors or employees with, any of the Original Langfang Shareholders [*e.g.*, Complaint ¶¶ 74-76, 77-81];

e.      CFO's accounting of its transactions with Langfang [*e.g.*, Complaint ¶¶ 9-11, 90-93, 103-04];

f.      CFO's AIC and SAIC filings as they relate to Langfang [*e.g.*, Complaint ¶¶ 59-62, 77-58];

g.      CFO's disclosures regarding its transactions with Langfang , including its alleged failure to appropriately characterize its relationship with Langfang or any of Langfang's owners [e.g., Complaint ¶¶ 17, 67-68, 83-93, 100-102, 105-110, 112, 120, 129-31, 176-91];

h.      The accounting set out in, and the audits of, CFO's financial statements in connection with related party transactions, CFO's VIE structure and the Langfang transactions [e.g., Complaint ¶¶ 21, 138-66];

i.      CFO's use of and management respecting its VIEs and WFOEs

[e.g., Complaint ¶¶ 139-40];

j.      The roles of CFO's current or former officers, directors and employees with respect to CFO's VIEs and WFOEs [e.g., Complaint ¶¶ 139-40];

k.      CFO's arbitration regarding monies owe to it in connection with the Langfang transactions, including its decision to initiate such arbitration, the timing of its decision to initiate arbitration and its decision to accept a settlement with respect to the arbitration award;

l.      Investigations or reviews of CFO or any of its current or former officers, directors, or employees, including any investigation by any Chinese authorities [e.g., Complaint ¶¶ 115-18, 132-37];

m.      CFO's code of ethics and other internal policies, practices or procedures addressing potential or actual conflicts of interest [e.g., Complaint ¶¶ 125-28];

n.      CFO's alleged awareness of its entry into related party transactions;

o.      CFO's financial condition as it was allegedly affected by related-party transactions during the Class Period;

p.      CFO's internal controls, processes, procedures, policies and practices relating to accounting or disclosure matters as they relate to related-party transactions; and

q.      CFO's statements about, or alleged omissions concerning, any or all of the above matters.

53.     "Original Langfang Shareholders" means Yiyong Wang, Yan He, Haimin Xu, and Jiantao Zhan.

54.     "Plan of Allocation" means the terms and procedures for allocating the Net Settlement Amount among, and distributing the Net Settlement Amount to, Authorized Claimants as the Court shall approve, which Lead Plaintiffs shall ask the Court to enter substantially in the form set out as Exhibit H.

55.     "Plaintiffs" means Lead Plaintiffs and named plaintiff Alan Beck.

56.     "Preliminary Approval Date" means the date on which the Court enters the Preliminary Approval Order.

57.      "Preliminary Approval Order" means the order concerning, among other things, notice, administration and the scheduling of the Fairness Hearing that the Settling Parties shall ask the Court to enter substantially in the form set out as Exhibit A.

58.     "PSLRA" means the Private Securities Litigation Reform Act of 1995, as codified in the Securities Act and the Exchange Act.

59.     "PSLRA Contribution Bar Order" means the order, the text of which is set forth in Section 14 of the Approval Order (Exhibit B), to be entered by the Court pursuant to Section 11(f) of the Securities Act and Section 21D(f)(7)(A) of the Exchange Act.

60.     "Qualified Settlement Fund" means a fund within the meaning of Treasury Regulation § 1.468B-1.

61.     "Released Class Members' Claims" means each and every Claim that Lead Plaintiffs or any other Class Member (i) asserted against any of the Releasees in the Action (including all Claims alleged in the original complaint, in previous amendments to the original complaint, and in the Complaint) or (ii) could have asserted or could assert against any of the Releasees in connection with any of the Operative Facts, whether arising under any federal, state, or other statutory or common law rule or under any foreign law, in any court, tribunal, agency or

other forum; provided that, for the avoidance of doubt, the term Released Class Members'

Claims means those Claims that both (A) arise out of or relate to the purchase or other

acquisition of CFO ADSs or to any other Investment Decision concerning CFO ADSs during the

Class Period, and (B) relate directly or indirectly to any of the Operative Facts and/or any alleged

statements about or characterization of – or alleged failures to disclose information about – any

of the Operative Facts, including with respect to both Sections I.A.62(i) and (ii) above. The term

"Released Class Members' Claims" also includes any Claim relating to the initiation, litigation,

settlement, or dissemination of notice of the Action; provided however, that the term "Released

Class Members' Claims" does not include any claims to enforce this Settlement Agreement.

   62. "Released Releasees' Claims" means each and every Claim that has been,

could have been, or could be asserted in the Action or in any other proceeding by Defendant or

any other Releasee or his, her or its respective estates, heirs, executors, agents, attorneys

(including in-house, outside counsel and Defendant's Counsel), beneficiaries, accountants,

professional advisors, trusts, trustees, administrators and assigns, against Lead Plaintiffs, any

other Class Members, or any of their respective attorneys (including, without limitation, Lead

Counsel) and that arises out of or relates in any way to the initiation, prosecution or settlement of

the Action or the implementation of this Settlement Agreement; provided that Released

Releasees' Claim shall not include any Claim to enforce the Settlement Agreement.

   63. "Releasee" means each and every one of, and "Releasees" means all of,

(*i*) CFO, , (*ii*) Dismissed Defendants and (*iii*) for each of the foregoing Releasees (x) their agents,

representatives, attorneys (including Defendant's Counsel), advisors, administrators,

accountants, consultants, assigns, assignees, partners, successors-in-interest, insurance carriers,

reinsurers and any entities in which any Releasee has or had a Controlling Interest or that has or

had a Controlling Interest in the Releasee, (y) to the extent the Releasee is an entity, its current and former officers, directors, officials, any and all in-house counsel and outside counsel, auditors, past or present parents, Affiliates, subsidiaries, divisions, business units, VIEs, WFOEs, successors, predecessors, employees, fiduciaries, service providers and investment bankers and (z) to the extent the Releasee is an individual, each of his or her estates, heirs, executors, beneficiaries, trusts and trustees.

64.     "Releasor" means each and every one of, and "Releasors" means all of, (i) Lead Plaintiffs, (ii) all other Class Members and (iii) for each of the foregoing Releasor (x) their agents, representatives, attorneys (including Lead Counsel), advisors, administrators, accountants, consultants, assigns, assignees, partners, successors-in-interest, insurance carriers, reinsurers and any entities (including any governmental entity) claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of Lead Plaintiffs or any other Class Member or any entities in which any Releasor has or had a Controlling Interest or that has or had a Controlling Interest in the Releasor, (y) to the extent the Releasor is an entity, its current and former officers, directors, officials, any and all in-house counsel and outside counsel, auditors, parents, affiliates, subsidiaries, successors, predecessors, employees, fiduciaries, service providers and investment bankers and (z) to the extent the Releasor is an individual, each of his or her estates, heirs, executors, beneficiaries, trusts and trustees.

65.     "SAIC" means the Chinese State Administration for Industry and Commerce.

66.     "Securities Act" means the Securities Act of 1933, as amended.

67.     "Service Award" means each and every one of, and "Service Awards" means all or some of, the awards made by the Court to each of the Lead Plaintiffs to compensate

such Lead Plaintiff for his or her time and effort in commencing and pursuing the Action.

68.   "Service Award Application" means the application by which each of the Lead Plaintiffs shall seek a Service Award.

69.   "Settlement" means the settlement contemplated by this Settlement Agreement.

70.   "Settlement Agreement" means this Stipulation of Settlement and any accompanying exhibits, including any subsequent amendments thereto and any exhibits to such amendments.

71.   "Settlement Amount" means three million dollars (USD $3,000,000).

72.   "Settling Parties" means Lead Plaintiffs (on behalf of themselves and Class Members) and Defendant.

73.   "Summary Notice" means the notice that is described in Section III.B, which notice the Settling Parties shall ask the Court to approve substantially in the form set out as Exhibit E.

74.   "Supplemental Agreement" shall mean the agreement entered into by the Settling Parties through their respective counsel that is referenced in Section XIII.C. below.

75.   "Tax Expenses" means (i) all taxes on the income of the monies in the Escrow Account and (ii) any expenses and costs incurred in connection with the taxation of the Escrow Account (including expenses of tax attorneys and accountants).

76.   "Unknown Claims" means any and all Released Class Members' Claims that any Plaintiff or any other Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Releasees, and any Released Releasees' Claims that any Releasee does not know or suspect to exist in his, her or its favor, which, if known by any

Plaintiff, Class Member or Releasee, might have affected his, her or its decision concerning the

Settlement.  As to any and all Released Class Members' Claims and Released Releasees' Claims,

the Settling Parties stipulate and agree that, upon the Final Settlement Date, Lead Plaintiffs and

Defendant shall expressly waive, and each other Class Member, Releasor and Releasee shall be

deemed to have waived, and by operation of the Approval Order and the Judgment shall have

expressly waived, any and all provisions, rights, and benefits conferred by any law of any state

or territory of the United States or of any other country, or any principle of common law, that is

similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does
> not know or suspect to exist in his or her favor at the time of
> executing the release, which if known by him or her must have
> materially affected his or her settlement with the debtor.

Lead Plaintiffs and Defendant acknowledge, and the other Class Members and Releasees by

operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown

Claims" in the definition of Released Class Members' Claims and Released Releasees' Claims

was separately bargained for and was a key element of the Settlement.

     77.    "VIE" means variable interest entities affiliated with CFO.

     78.    "WFOE" means CFO's wholly foreign-owned subsidiaries.

    B.    Capitalized Terms

     1.    Capitalized terms used in this Settlement Agreement, but not defined

above, shall have the meaning ascribed to them in this Settlement Agreement.

## II.    TERMS AND CONDITIONS OF THE SETTLEMENT

    A.    **Payment of Settlement Amount**

     1.    CFO shall cause the Settlement Amount to be transferred into the Escrow

Account within forty two (42) days after entry of the Preliminary Approval Order.  If the

Settlement Amount is not transferred to the Escrow Account consistent with this Section, Lead Plaintiffs may, within their sole discretion, terminate or enforce this Settlement Agreement, subject to Section XIII, below.

       2.      After the Final Settlement Date, the Settlement Amount shall be "non-recapture," meaning that no portion of it shall revert to CFO or any other payer (including any of defendant's insurers or reinsurers) if any money remains after all claims and expenses have been paid.

       3.      Neither CFO nor any other payer of any portion of the Settlement Amount (including any of CFO's insurers or reinsurers) shall have any legal or equitable interest in the funds in the Escrow Account  unless and until an event of termination occurs as provided in this Settlement Agreement, or the Settlement otherwise does not become Final; *provided however*, that Defendant shall be entitled in accordance with the terms of the Settlement Agreement to monitor and approve expenses paid from the Escrow Account before the Final Settlement Date.

    B.    **Escrow Agent**

       1.      The Escrow Agent shall (*i*) administer the Escrow Account, (*ii*) invest the Settlement Amount in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof and (*iii*) reinvest the proceeds of those instruments as they mature in similar instruments at their then-current market rates.   The Escrow Agent shall bear all risks relative to the investment of the amounts in the Escrow Account made in accordance with the guidelines set forth in this paragraph.

       2.      The proceeds of the Escrow Account shall be disbursed only as provided in this Settlement Agreement, by an order of the Court, or, before the Final Settlement Date, with

the written agreement of Defendant's Counsel and Lead Counsel; *provided however*, that disbursements from the Escrow Account for the payment of Tax Expenses or Notice and Administrative Expenses, as set forth herein, shall be made by the Escrow Agent at the direction of Lead Counsel in accordance with the terms of this Settlement Agreement.  After the Final Settlement Date, Lead Counsel shall have sole responsibility for the administration of the Escrow Account in accordance with the terms of this Settlement Agreement.

3.      Subject to further order and/or direction as may be made by the Court, the Escrow Agent is authorized to execute such transactions on behalf of the Class Members as are consistent with the terms of this Settlement Agreement.

4.      The Settlement Amount and the Net Settlement Amount shall be deemed and considered to be *in custodia legis* of the Court and shall remain subject to the Court's jurisdiction until such time as they shall be distributed pursuant to this Settlement Agreement and/or further order(s) of the Court.

5.      After the Settlement Amount is deposited into the Escrow Account and before the Final Settlement Date, Lead Counsel may direct the Escrow Agent to pay from the Escrow Account all reasonable Notice and Administrative Expenses up to the sum of $150,000. Any expenditures exceeding $150,000 before the Final Settlement Date will be subject to agreement by Defendant's Counsel, which agreement shall not be unreasonably withheld.  After the Final Settlement Date, Lead Counsel may, with approval of the Court, direct the payment of any Notice and Administrative Expenses that Lead Counsel believes in its discretion are necessary and appropriate to carry out the terms of this Settlement Agreement.

6.      Any dispute about the payment of expenses from the Escrow Account before the Final Settlement Date will be submitted to the Mediator for final, binding resolution.

C.     **Qualified Settlement Fund**

1.     All necessary steps to enable the Escrow Account to be treated as a Qualified Settlement Fund for tax purposes shall be taken, including the timely filing by Lead Counsel and/or its agents of all elections and statements required for tax purposes pursuant to Treas. Reg. §§ 1.468B-0 through 1.468B-5, or any other relevant statutes, regulations, or published rulings now or hereafter enacted or promulgated, for all taxable years of the Escrow Account, beginning with the date of its establishment.  The Claims Administrator shall be the "administrator" of the Qualified Settlement Fund for tax purposes under Treas. Reg. §§ 1.460B-0 through 1.468B-5, shall file or cause to be filed on a timely basis any required federal state, and local tax returns, and shall cause any taxes due on the income of the Qualified Settlement Fund to be paid from the Escrow Account.  The Settling Parties agree that the Escrow Account shall be treated as a Qualified Settlement Fund, as provided in Treas. Reg. §§ 1.468B-0 through 1.468B-5, from the earliest date possible, and hereby agree to any relation-back election required to treat the Escrow Account as a Qualified Settlement Fund from the earliest date possible.  In no event shall Defendant have any responsibility whatsoever for filing elections, other required statements, or tax returns, or for paying the costs associated therewith, any taxes due, or the expenses of notice or administration of the Escrow Account.  Lead Counsel and Defendant's Counsel shall cooperate to the extent necessary to comply with this Section II.C.  Upon request by Lead Counsel, CFO shall promptly provide the statement described in Treasury Regulation § 1.468B-3(e).

2.     Upon request by Defendant's Counsel, the Claims Administrator shall promptly provide to Defendant's Counsel all information available to Lead Counsel and requested in connection with any tax returns that CFO or any other Releasee must file or with

22

any other report or filing that CFO or any other Releasee must make concerning the Settlement Amount or any portion of it.

      D.      **Distribution of the Net Settlement Amount**

      1.      If the proposed Settlement becomes Final, the Net Settlement Amount shall be distributed pursuant to such Plan of Allocation as the Court approves.

      2.      No person or entity shall have any Claim against Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent, or any of their agents, or against Defendant or any other Releasee (including Defendant's Counsel), relating to or arising out of any distributions or lack thereof made under any Court-approved Plan of Allocation, this Settlement Agreement, or orders of the Court.

      3.      The Settling Parties understand and agree that, notwithstanding any other provision of this Settlement Agreement, a court-ordered or court-approved change to the Plan of Allocation shall not operate to modify, terminate or cancel this Settlement Agreement or affect the Approval Order and the Judgment or any other orders entered by the Court giving effect or pursuant to this Settlement Agreement from becoming Final.

      4.      Development of the Plan of Allocation shall be exclusively the responsibility of Lead Plaintiffs and Lead Counsel.  Defendant, the other Releasees, and their respective counsel, including Defendant's Counsel, shall have no role in, responsibility for, or liability as to or in connection with, and shall take no position on, (*i*) the Plan of Allocation, (*ii*) the form, substance, method, or manner of allocation, administration or distribution of the Net Settlement Amount, (*iii*) any tax liability that a Class Member might incur as a result of this Settlement Agreement, or (*iv*) the result of any action taken pursuant to this Settlement Agreement the administration or processing of claims (including determinations as to the validity

of Claim Forms), the amounts of claims or distribution of the Net Settlement Amount, or (except as set out above) the maintenance of the Escrow Account as a Qualified Settlement Fund.

5.      Class Members shall look solely to the Net Settlement Amount for settlement and satisfaction of all Released Class Members' Claims and only to the extent expressly provided by this Settlement Agreement, the Court-approved Plan of Allocation, or an order of the Court.  Under no circumstances will any of the Settling Parties or any Releasee be responsible for the payment of any fees, costs, expenses or other funds associated with or arising out of the Settlement contemplated by this Settlement Agreement other than as provided herein.

6.      To the extent that any monies remain in the Escrow Account after the Claims Administrator has caused initial distributions to be made from the Net Settlement Amount to all Authorized Claimants, such monies shall be (*i*) used for the payment of any unpaid costs or fees incurred in administering the Escrow Account for such redistribution and then (*ii*) distributed to Class Members who have cashed their initial distribution checks and who would receive at least $10.00 from such redistribution.  If any funds remain in the Escrow Account after such redistribution(s), or if any such redistribution is not economically feasible, the unpaid residue shall be given to the Howard University Investor Justice and Education Clinic or a similar nonprofit organization to be agreed upon by the Settling Parties.

E.      **Plan of Allocation**

1.      All cash distributions to Authorized Claimants shall be paid from the Net Settlement Amount pursuant to a Plan of Allocation approved by the Court.

2.      The Plan of Allocation is not a necessary term of this Settlement Agreement, and this Settlement Agreement is not conditioned on the approval of any particular plan of allocation.

3.      To receive a cash distribution from the Net Settlement Amount pursuant to any approved Plan of Allocation, a Class Member must be an Authorized Claimant pursuant to the procedures set out in this Settlement Agreement or by order of the Court.

4.      Unless otherwise authorized by the Court, each Class Member who wishes to receive a distribution from the Net Settlement Amount must complete and submit a Claim Form, as directed in the Individual Notice and the Claim Form.  The Claim Form must be postmarked no later than the date stated in the Claim Form, unless otherwise allowed by Lead Counsel or the Court, must be sent to an address stated in the Claim Form, and must be accompanied by adequate supporting documentation as described on the Claim Form and in the Preliminary Approval Order.

5.      The Claim Form must be made subject to the penalties of perjury pursuant to 28 U.S.C. § 1746.

6.      The validity of each submitted Claim Form will initially be determined by the Claims Administrator in accordance with the Plan of Allocation approved by the Court.  The Claims Administrator shall advise the Class Member in writing if it determines to reject the claim.  Lead Counsel shall have the right, but not the obligation, to advise the Claims Administrator to waive, in the interests of achieving substantial justice, what Lead Counsel deems to be formal or technical defects in any Claim Forms submitted.  Lead Counsel, its designees or agents, Lead Plaintiffs, Defendant's Counsel, Defendant, Dismissed Defendants, the other Releasees, and their counsel shall not have any liability arising out of any such determinations. Persons who timely submit a Claim Form that is deficient or otherwise rejected shall be afforded a reasonable time (at least fifteen (15) days) to cure such deficiency if it shall appear that such deficiency may be curable.

7.      If any Class Member whose claim has been rejected in whole or in part desires to contest such rejection, the Class Member must, within fifteen (15) days after the date of such rejection, submit to the Claims Administrator a notice and statement of reasons explaining the Class Member's grounds for contesting the rejection, along with any supporting documentation.  If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.  The administration of the Escrow Account and the Net Settlement Amount, and decisions on all disputed questions of law and fact concerning the validity of any Claim Form or regarding the rejection or amount of any claim, shall remain under the jurisdiction of the Court.  All Class Members and Settling Parties expressly waive trial by court or jury (to the extent any such right might exist) and any right of appeal or review as to the Court's determination.  Any Class Member pursuing a dispute shall be responsible for his, her or its own costs, including attorneys' fees, incurred in pursuing the dispute.

8.      The Net Settlement Amount shall not be distributed to Authorized Claimants until the Final Settlement Date has occurred.

9.      Unless otherwise ordered by the Court or otherwise provided for herein, any Class Member who fails to submit a valid and timely Claim Form shall be barred from receiving a distribution from the Net Settlement Amount, but shall nevertheless be bound by the Release and all proceedings, orders and judgments in the Action even if he, she or it has pending, or subsequently initiates, any litigation, arbitration, or other proceeding, or has any Claim, against any or all of the Releasees that is a Released Class Members' Claim.

## III.    NOTICE TO THE CLASS

### A.    Individual Notice

1.      Subject to the requirements of the Preliminary Approval Order, and in

accordance with all applicable laws, Lead Counsel shall cause the Claims Administrator to mail by first-class mail a copy of the Individual Notice and the Claim Form to all potential Class Members who can be identified through reasonable efforts from CFO's records, depositary institutions' records, and any other inquiries conducted by the Claims Administrator.

2. The Claims Administrator will also post the Individual Notice on its website by no later than the date on which the first Individual Notices are mailed to potential Class Members.

B. **Summary Notice**

1. Subject to the requirements of the Preliminary Approval Order, and in accordance with all applicable laws, Lead Counsel shall cause a copy of the Summary Notice to be published one time in each of *The Wall Street Journal* and *Investor's Business Daily* as well as on PRNewswire.

C. **CAFA Notice**

1. CFO shall cause notice to be provided to United States federal and state officials if and to the extent required by CAFA.

2. The Settling Parties shall request a schedule for the Fairness Hearing that in consistent with the notice periods prescribed in CAFA.

D. **Notice Costs**

1. All expenses incurred in connection with the provision of the Individual Notice and the publication of the Summary Notice will be paid from the Settlement Amount in the Escrow Account.

2. CAFA notice shall be at CFO's expense.

IV.     **APPOINTMENT OF A CLAIMS ADMINISTRATOR**

A.      As provided in the Preliminary Approval Order, the Claims Administrator shall assist Lead Plaintiffs and Lead Counsel in administering and implementing the Settlement contemplated by this Settlement Agreement.  CFO shall cooperate in the administration of the Settlement Agreement to the extent reasonably necessary to effectuate its terms (but not including any acts that the Claims Administrator or other Settling Parties are required to undertake pursuant to this Settlement Agreement).

B.      The Claims Administrator shall perform various tasks as directed by Lead Counsel, including:  (*i*) mailing the Individual Notice to potential Class Members; (*ii*) arranging for publication of the Summary Notice; (*iii*) publishing the Individual Notice and other documents about the Action on the Claims Administrator's website; (*iv*) answering written inquiries from potential Class Members and/or forwarding such inquiries to Lead Counsel; (*v*) providing additional copies of the Individual Notice, upon request, to Nominees or potential Class Members; (*vi*) receiving and maintaining any requests for exclusion from the Settlement received from potential Class Members; (*vii*) receiving and processing Claim Forms from Class Members; (*viii*) mailing or causing to be mailed to Authorized Claimants their distributions under the Plan of Allocation; and (*ix*) otherwise administering and implementing this Settlement Agreement.

C.      As ordered by the Court in the Preliminary Approval Order, the Claims Administrator shall establish and staff with representatives knowledgeable about this Settlement Agreement and the Plan of Allocation a toll-free telephone number for responding to inquiries from potential Class Members about this Settlement Agreement and any issues relating to the Action.

D.     All settlement-administration expenses, including the Claims Administrator's fees and expenses, will be paid from the Settlement Amount in the Escrow Account.

## V.     RIGHT TO COMMUNICATE WITH CLASS MEMBERS

A.     Lead Plaintiffs acknowledge and agree that Releasees' right to communicate orally and in writing with holders of CFO securities (including potential Class Members) about the Action and the proposed Settlement is limited to the following:

1.     Communications regarding the subject matter of this Settlement Agreement between potential Class Members and representatives of the Releasees whose responsibilities include investor relations;

2.     Communications as may be necessary to implement the terms of this Settlement Agreement; and

3.     Such communications as may be made in the conduct of Releasees' business, including complying with any applicable NASDAQ requirements.

B.     Subject to Section XIV.C below, the Settling Parties, Lead Counsel and Defendant's Counsel agree to cooperate in good faith to ensure that any comments about or descriptions of the proposed Settlement are balanced, fair, and accurate and that CFO's participation in this proposed Settlement will be set forth in the most positive light.  The Settling Parties, Lead Counsel and Defendant's Counsel agree that they will refrain from asserting that the Action was brought or defended in bad faith.  Except as provided in the Individual Notice and the Summary Notice, as permitted by Sections IV, V, and XIV.C, or in court filings in support of Court Approval of this Settlement, the Settling Parties, Lead Counsel and Defendant's Counsel agree that none of them will comment publicly on the merits of the Claims or defenses asserted in the Action except in the most general terms in the context of supporting or commending the Settlement terms.

29

## VI.    REQUESTS FOR EXCLUSION

A.    Any potential Class Member who wishes to be excluded from the Class must mail by first-class mail or otherwise deliver a written request for exclusion to the Claims Administrator at the address provided in the Individual notice or the Summary Notice, which exclusion request must be received no later than thirty (30) days before the Fairness Hearing, or as the Court may otherwise direct.  A list of the persons and entities who have validly and timely requested exclusion from the Class shall be provided by the Settling Parties to the Court at or before the Fairness Hearing.

B.    A potential Class Member's request for exclusion must include the following information:  (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) email address, if available, (*v*) number of shares of CFO ADSs purchased or otherwise acquired or sold during the Class Period, (*vi*) price(s) paid or value at receipt, and, if sold, the sales price(s), (*vii*) the date of each such transaction involving each CFO ADS and (*viii*) account statements verifying all such transactions and/or the number of CFO ADSs still held.

C.    Unless otherwise ordered by the Court, any Class Member who does not submit a timely written request for exclusion as provided by this Section VI shall nevertheless be bound by the Release and by all proceedings, orders and judgments in the Action, even if he, she or it has a pending or subsequently initiates litigation, arbitration, or any other proceeding, or has any other Claim, against any or all of the Releasees relating to any of the Released Class Members' Claims.

D.    Plaintiffs agree that they will not request exclusion from the Class or the Settlement.

## VII.   OBJECTIONS TO SETTLEMENT

A.      Any Class Member who wishes to object to the fairness, reasonableness or adequacy of this Settlement Agreement, to any term(s) of this Settlement Agreement, to the Plan of Allocation, or to the Attorneys' Fees and Expenses Application must both serve on Lead Counsel and Defendant's Counsel and file with the Court a statement of his, her, or its objection(s); *provided however*, that a potential Class Member who requests exclusion from the Class shall not be entitled to submit an objection.  Any such objection must be received by Lead Counsel, Defendant's Counsel and the Court by no later than twenty (20) days before the Fairness Hearing, or as the Court may otherwise direct.

B.      The Class Member's statement of objection shall state the specific reason(s), if any, for each objection, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of such objection.  Any objection must also include the following information about the Class Member: (*i*) name, (*ii*) address, (*iii*) telephone number, (*iv*) email address, if available, (*v*) number of shares of CFO ADSs purchased or otherwise acquired or sold during the Class Period, (*vi*) price(s) paid or value at receipt, and, if sold, the sales price(s), (*vii*) the date of each such transaction involving each CFO ADS, and (*viii*) account statements verifying all such transactions and/or the number of CFO ADSs still held.

C.      Any Class Member may file an objection on his, her or its own, or through an attorney hired at his, her or its own expense.  If a Class Member hires an attorney to represent him, her or it in connection with filing an objection, the attorney must both serve on Lead Counsel and Defendant's Counsel and file with the Court a notice of appearance.  Subject to the requirements of the Preliminary Approval Order, any such notice of appearance must be received

by Lead Counsel, Defendant's Counsel and the Court by no later than twenty (20) days before the Fairness Hearing, or as the Court may otherwise direct.

D.     Any Class Member who files and serves a written objection pursuant to this Section – and, unless otherwise ordered by the Court, only such Class Members – may appear at the Fairness Hearing, either in person or through counsel hired at the Class Member's expense, to object to the fairness, reasonableness or adequacy of this Settlement Agreement, to any term(s) of this Settlement Agreement, to the Plan of Allocation, or to the Attorneys' Fees and Expenses Application.  Class Members or their attorneys intending to make an appearance at the Fairness Hearing must both serve on Lead Counsel and Defendant's Counsel and file with the Court a notice of intention to appear.  Any such notice must be received by Lead Counsel, Defendant's Counsel and the Court by no later than twenty (20) days before the Fairness Hearing, or as the Court may otherwise direct.

E.     Any Class Member who fails to comply with any of the provisions of this Section shall waive and forfeit any and all rights he, she or it might otherwise have to appear separately at the Fairness Hearing and/or to object to this Settlement Agreement, the Plan of Allocation, or the Attorneys' Fees and Expenses Application, and shall be bound by all the terms of this Settlement Agreement and by all proceedings, orders and judgments in the Action.

**VIII.   RELEASE AND WAIVER, AND ORDER OF DISMISSAL**

A.     **Release and Waiver**

1.     Pursuant to the Approval Order and the Judgment, without further action by anyone, and subject to Section VIII.A.4 below, on and after the Final Settlement Date, Lead Plaintiffs and all other Class Members (whether or not a Claim Form has been executed and/or delivered by or on behalf of such Class Members), on behalf of themselves and the other Releasors, for good and sufficient consideration, shall be deemed to have, and by operation of

law and of the Approval Order and the Judgment shall have, fully, finally and forever released

relinquished, settled and discharged:

        a.      all Released Class Members' Claims against each and every one of

the Releasees;

        b.      all Claims, damages, and liabilities as to each and every one of the

Releasees to the extent that any such Claims, damages, or liabilities relate in any way to any or

all acts, omission, nondisclosures, facts, matters, transactions, occurrences, or oral or written

statements or representations in connection with, or directly or indirectly relating to, (*i*) the

prosecution, defense or settlement of the Action, (*ii*) this Settlement Agreement, (*iii*) the

Settlement terms and their implementation, (*iv*) the provision of notice in connection with the

proposed Settlement and/or (*v*) the resolution of any Claim Forms submitted in connection with

the Settlement; and

        c.      all Claims against any of the Releasees for attorneys' fees, costs, or

disbursements incurred by Plaintiffs' counsel (including Lead Counsel) or any other counsel

representing Plaintiffs or any other Class Member in connection with or related in any manner to

the Action, the settlement of the Action, or the administration of the Action and/or its Settlement,

except to the extent otherwise specified in this Settlement Agreement.

        2.      Pursuant to the Approval Order and the Judgment, without further action

by anyone, and subject to Section VIII.A.4 below, on and after the Final Settlement Date, each

and every Releasee, including Defendant's Counsel, for good and sufficient consideration, the

receipt and adequacy of which are hereby acknowledged, shall be deemed to have and by

operation of law and of the Approval Order and the Judgment shall have, fully, finally and

forever released, relinquished, settled and discharged each and all Releasors, as well as Lead

Counsel, from any and all Released Releasees' Claims, except to the extent otherwise specified in this Settlement Agreement.

3.     Pursuant to the Approval Order and the Judgment, without further action by anyone, and subject to Section VIII.A.4 below, on and after the Final Settlement Date, Lead Plaintiffs and their counsel (including Lead Counsel) on behalf of themselves, their heirs, executors, administrators, predecessors, successors, Affiliates, assigns, and any person or entity claiming by, through or on behalf of any of them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Approval Order and the Judgment shall have, fully, finally and forever released, relinquished, settled and discharged Defendant's Counsel and all other Releasees from any and all Claims that relate in any way to any and all acts directly or indirectly relating to the prosecution, defense, or settlement of the Action or to this Settlement Agreement, except to the extent otherwise specified in this Settlement Agreement.

4.     Notwithstanding Sections VIII.A.1, VIII.A.2, and VIII.A. 3 above, nothing in the Approval Order or the Judgment shall bar any action or Claim by the Settling Parties or their counsel to enforce the terms of this Settlement Agreement, the Approval Order or the Judgment.

5.     The releases and waivers contained in this Section were separately bargained for and are essential elements of this Settlement Agreement.

B.     **Judgment and Order of Dismissal**

1.     The Settling Parties will seek and obtain from the Court an Approval Order and a Judgment as further described in Section XII below.

## IX.    ATTORNEYS' FEES AND EXPENSES

A.    Lead Counsel may submit an Attorneys' Fees and Expenses Application to the Court for approval.   The Attorneys' Fees and Expenses Award will be paid to Lead Counsel as set out in this Section IX.

B.    Any Attorneys' Fees Award shall be paid to Lead Counsel from the Escrow Account within three (3) Business Days of the Claims Administrator informing Lead Counsel that checks amounting to more than 80% of the Net Settlement Fund have been cashed or deposited by Class Members.

C.    Any Expenses Award shall be paid to Lead Counsel from the Escrow Account within three (3) Business Days of the Distribution Date.

D.    Payments pursuant to Sections IX.B and IX.C shall be made pursuant to this Section notwithstanding the existence of any timely filed objections or appeals to the Attorneys' Fees and Expenses Award; *provided however*, that such payment shall be subject to Lead Counsel's obligation (as evidenced by appropriate security) to make appropriate repayment to the Escrow Account (plus interest calculated at the same net rate as earned by the balance of the Escrow Account, such calculation to begin as of the day the Attorneys' Fees and Expenses Award was paid to Lead Counsel and to end as of the day the repayment is made pursuant to this Section) within five (5) Business Days following either (*i*) reduction or reversal of the Attorneys' Fees and Expenses Award as a result of any reconsideration proceedings, appellate review, and/or further proceedings on remand or (*ii*) proper and timely termination of this Settlement Agreement in accordance with its terms.

E.    As a condition of receiving all or any portion of the Attorneys' Fees Award and Expenses Award (including payments pursuant to Sections IX.B or IX.C), Lead Counsel, on behalf of itself and each of its partners, members and/or shareholders, are subject to the

jurisdiction of the Court for the purpose of enforcing the obligations in this Section.

F.      No Releasee shall be liable or obligated to pay any fees, expenses, costs or disbursements to, or incur any expense on behalf of, any person or entity (including Lead Plaintiffs and Lead Counsel), directly or indirectly, in connection with the Action or this Settlement Agreement, except as expressly provided for in this Settlement Agreement.

G.      No Releasee shall have any responsibility whatsoever in connection with the allocation of the Attorneys' Fees and Expenses Award between or among Plaintiffs' counsel, any other counsel purporting to represent any Class Member, or any counsel asserting a right to receive a portion of the Attorneys' Fees and Expenses Award or any other amount of attorneys' fees or expenses in connection with this Action.

## X.    SERVICE AWARDS

A.      Each of the Lead Plaintiffs may submit a Service Award Application to the Court for approval, which Service Award Application will take into account the time spent by the respective Lead Plaintiff in pursuing the Action (including, without limitation, the time spent consulting with Lead Counsel, reviewing documents, filings and factual materials in the Action.

B.      Any Service Award made to a Lead Plaintiff shall be paid to such Lead Plaintiff from the Escrow Account within three (3) Business Days of the Distribution Date.

## XI.   PRELIMINARY APPROVAL

A.      Promptly after this Stipulation has been fully executed, Lead Counsel and Defendant's Counsel shall jointly apply to the Court for entry of the Preliminary Approval Order.

B.      Lead Plaintiffs and Defendant stipulate to the certification of the Class and certification of Lead Plaintiffs as representatives of the Class solely for the purpose of this proposed Settlement.  If the proposed Settlement is not approved by the Court or is not

36

consummated for any other reason, Defendant reserves the right to oppose certification of the Class, or any other class, and to oppose certification or appointment of Lead Plaintiffs as representatives of, and Lead Counsel as counsel for, the Class, or any other class, in the Action.

## XII.   FINAL APPROVAL AND FINAL JUDGMENT

A.      If the Court approves the Settlement contemplated by this Settlement Agreement, Lead Counsel and Defendant's Counsel shall jointly request that the Court enter the Approval Order and the Judgment.

## XIII.   MODIFICATION OR TERMINATION OF THIS SETTLEMENT AGREEMENT

A.      The terms and provisions of this Settlement Agreement may be amended or expanded by written agreement of the Settling Parties; *provided however*, that, after entry of the Approval Order and the Judgment, Lead Counsel, on behalf of Lead Plaintiffs and the Class, and Defendant's Counsel, on behalf of Defendant, may by written agreement effect any amendments, modifications or expansions of this Settlement Agreement and its implementing documents (including all exhibits to this Settlement Agreement) without notice to or approval by the Court only if such changes are not materially inconsistent with the Court's Approval Order and Judgment and do not materially limit the rights of Class Members under this Settlement Agreement.

B.      **Mutual Termination Rights**

1.      Subject to Section XIII.C below, this Settlement Agreement will terminate at the sole option and discretion of Defendant and/or Lead Counsel (on behalf of Lead Plaintiffs and the Class) if (*i*) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Settlement Agreement or the proposed Settlement that the terminating Settling Party reasonably and in good faith determines is material, including the terms of relief, the findings of the Court, the provisions relating to notice, the definition of the Class, the

Complete Bar Order, the permanent injunction and/or the terms of the Release, or (*ii*) the Court, or any appellate court(s), does not enter or completely affirm, or alters or expands, any portion of the Preliminary Approval Order, the Approval Order, or the Judgment that the terminating Settling Party reasonably and in good faith believes is material. If the Settling Parties disagree about whether a change is material, they will submit the dispute to the Mediator for a final, binding decision. In any of the above circumstances, the terminating Settling Party must exercise the option to withdraw from and terminate this Settlement Agreement, as provided in this Section, no later than thirty (30) days after receiving actual notice of the event prompting the termination.

    2.  Notwithstanding the preceding Section XIII.B.1, neither Lead Plaintiffs nor Lead Counsel may terminate this Settlement Agreement this Settlement Agreement on the basis of the Attorneys' Fees and Expenses Award ordered by the Court, or as modified by any appellate court(s).

    C.  **Defendant's Termination Rights**

    1.  In addition to having the right to terminate this Settlement Agreement as provided in Section XIII.B above and without limiting any other rights under this Settlement Agreement, (*i*) by no later than two (2) days before the Fairness Hearing, Defendant may unilaterally withdraw from and terminate this Settlement Agreement if requests for exclusion are received from potential Class Members in accordance with the terms of the Supplemental Agreement and (*ii*) by no later than ten (10) Business Days following the Execution Date, Defendant's Board of Directors has not approved Defendant's execution of this Settlement Agreement.

    D.  **Lead Plaintiffs' Termination Rights**

1.      In addition to having the right to terminate this Settlement Agreement as provided in Section XIII.B above and without limiting any other rights under this Settlement Agreement, if, as a result of the Additional Information that Defendant provided to Lead Plaintiffs after an agreement in principle was reached, Lead Plaintiffs and Lead Counsel reasonably and in good faith do not believe that the proposed Settlement Agreement is fair, reasonable and adequate, they will have the right to terminate this Settlement Agreement within thirty (30) days from the Preliminary Approval Date.

## XIV.   GENERAL MATTERS AND RESERVATIONS

A.      If an option to withdraw from and terminate this Settlement Agreement arises under this Settlement Agreement, (*i*) neither Defendant nor Lead Plaintiffs will be required for any reason or under any circumstance to exercise that option, and (*ii*) if either Defendant or Lead Plaintiffs exercise the option to withdraw from or terminate the Settlement, the terminating Settling Party shall exercise that option in good faith.

B.      If (*i*) this Settlement Agreement does not become Final or is otherwise terminated pursuant to the terms hereof, (*ii*) the Releases set out in Section VIII.A do not become effective, (*iii*) or the Settlement does not become Final by operation of law, then:

1.      This Settlement Agreement shall be null and void and shall have no force or effect, and no party to this Settlement Agreement shall be bound by any of its terms, except for the terms set out in this Section;

2.      This Settlement Agreement, all of its provisions, and all negotiations, statements, and proceedings relating to it shall be without prejudice to the rights of Defendant, any other Releasee, Lead Plaintiffs, or any other Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Settlement Agreement, except with respect to the payment from the Settlement Amount of such Notice and

Administrative Expenses and Tax Expenses as have been actually expended or incurred, regardless of amount, as described in Section II above;

3.      Releasees expressly and affirmatively reserve all motions as to, and arguments in support of, all Claims that have been or might later be asserted in the Action, including any argument that the Action may not be litigated as a class action;

4.      Lead Plaintiffs and all other Class Members expressly and affirmatively reserve all motions as to, and arguments in support of, all Claims that have been or might later be asserted in the Action, including any argument concerning class certification;

5.      Neither this Settlement Agreement nor the fact of its having been made shall be admissible or entered into evidence for any purpose whatsoever, with the exception of Section II.C and Sections XIII and XIV;

6.      The terms and provisions of the Confidentiality Agreement as set out in Exhibit G shall continue in full force and effect;

7.      Within five (5) days after receiving notice of termination, the Escrow Agent shall return to CFO (or to any other entity as directed by CFO) all funds remaining in the Escrow Account (after subtraction of amounts needed to pay incurred but as yet unpaid Notice and Administrative Expenses); and

8.      Except as specifically provided herein, nothing in this Settlement Agreement shall create any obligation on the part of any Settling Party to pay any other Settling Party's fees or expenses.

C.      Except as provided in Section V or as may otherwise be required by law:

1.      The Settling Parties and their counsel agree to keep the contents of this Settlement Agreement and all related negotiations confidential until the motion for preliminary

approval is filed with the Court and, as to any initial press release announcing the settlement described in this Settlement Agreement, to attempt in good faith to coordinate the timing of such press release; *provided however*, that this Section shall not prevent earlier disclosure of such information by the Settling Parties or their counsel to any person or entity (such as clients, experts, courts, regulatory entities, insurers, reinsurers and/or administrators) to whom the Settling Parties agree disclosure must be made to implement the terms of this Settlement Agreement.

2.      Lead Plaintiffs and CFO each shall have the opportunity to review and comment on the other's press release (if any) before the release is issued, and CFO shall have the right to review and approve Lead Plaintiffs' press release (if any).  Any press release issued by Lead Plaintiffs, Lead Counsel or Defendant must be consistent with the terms of this Settlement Agreement.

3.      Notwithstanding any other provision of this Section, Defendant shall be entitled to make, without prior review or approval by Lead Counsel, any and all disclosures regarding this Settlement Agreement that it believes might be required or appropriate to its insurers, reinsurers, regulators, stock exchanges (including the NASDAQ), the Securities and Exchange Commission, the Department of the Treasury, any other foreign or domestic regulatory body (including any Chinese regulatory body), and/or the Releasees' former or current independent auditors, accountants, attorneys, financial institutions, insurers or lenders when disclosure to such individuals or entities is required in the normal course of the Releasees' business; *provided however¸* that (*i*) any and all such disclosures or statements shall be balanced, fair and accurate, and Defendant shall refrain from asserting that any Claim asserted in the

41

Action was brought in bad faith and (*ii*) Lead Counsel will be given advance notice, to the extent possible, of any such disclosures and their general substance.

4.      The Settling Parties further agree that Defendant's participation in this proposed Settlement shall be set forth in the most positive light.

D.      All of the exhibits attached to this Settlement Agreement are incorporated by reference as though fully set forth herein.

E.      The Settling Parties intend that the Settlement Agreement shall be a final and complete resolution of all disputes that were, could have been, or could be asserted as to the Released Class Members' Claims and the Released Releasees' Claims.  Accordingly, the Settling Parties agree not to assert in any forum that any conduct of Plaintiffs, Defendant and/or Dismissed Defendants, or any of them, in connection with this Action, the Settlement of this Action, or any of the Released Class Members' Claims or Released Releasees' Claims was in bad faith or was unreasonable.  No Settling Party shall assert any Claim that any other Settling Party violated Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense or settlement of the Action.

F.      The Settling Parties agree that the amount paid and the other terms of the Settlement Agreement were negotiated at arm's length in good faith by the Settling Parties and reflect an agreement that was reached voluntarily, after consultation with experienced legal counsel and under the auspices of the Mediator.

G.      Each Settling Party's counsel signing this Settlement Agreement represents that he or she is authorized to enter into this Settlement Agreement on behalf of his or her clients.

H.      Lead Plaintiffs, through their duly authorized representative, represent that they (*i*) have agreed to serve as representatives of the Class proposed to be certified herein, (*ii*) have

consulted with Lead Counsel about the Action, this Settlement Agreement and the obligations of a representative of the Class, and (*iii*) will remain in and not request exclusion from the Class and will serve as a representative of the Class until the terms of this Settlement Agreement are effectuated, this Settlement Agreement is terminated in accordance with its terms, or the Court at any time determines that Lead Plaintiffs cannot represent the Class.

I.       This Settlement Agreement (including the Supplemental Agreement) sets forth the entire agreement among the Settling Parties as to its subject matter and may not be altered or modified except by a written instrument executed by all Settling Parties' counsel.  Lead Plaintiffs and Defendant expressly acknowledge that there are no agreements, arrangements, or understandings among or between them concerning the subject matter of this Settlement Agreement other than those expressed or referred to in this Settlement Agreement (or the Supplemental Agreement), and no Settling Party has relied upon any representation or warranty not set forth expressly herein.

J.       This Settlement Agreement shall be governed by and interpreted according to the laws of the State of New York, excluding its conflict of laws provisions.

K.       Any action arising under or to enforce this Settlement Agreement shall be commenced and maintained only in the Court, which shall retain continuing, exclusive jurisdiction over all matters relating to the Settlement other than those specifically reserved for resolution by the Mediator.

L.       Whenever this Settlement Agreement requires or contemplates that a Settling Party shall or may give notice to the other, notice shall be provided by facsimile, email, and/or next-day (excluding Saturday, Sunday and Legal Holidays) express-delivery service as follows

and shall be deemed effective upon such facsimile or email transmission or delivery to the

facsimile number, email address, or street address, as the case may be, below:

      1.      If to Defendant, then to:

          Ralph C. Ferrara
          rferrara@proskauer.com
          Ann M. Ashton
          aashton@proskauer.com
          Proskauer Rose LLP
          1001 Pennsylvania Avenue, N.W.
          Suite 600 South
          Washington, D.C. 20004
          Telephone: (202) 416-5820
          Facsimile: (202) 416-6899

          Julia D. Alonzo
          jalonzo@proskauer.com
          Proskauer Rose LLP
          Eleven Times Square
          New York, NY 10036-8299
          Telephone: (212) 969-3000
          Facsimile: (212) 969-2900

      2.      If to Lead Plaintiffs, then to:

          Laurence Rosen
          lrosen@rosenlegal.com
          Jonathan Horne
          jhorne@rosenlegal.com
          The Rosen Law Firm, P.A.
          275 Madison Avenue, 34th Floor
          New York, NY 10016
          Telephone: (212) 686-1060
          Facsimile: (212) 202-3827

      M.      All time periods set forth herein shall be computed in calendar days unless

otherwise expressly provided.  In computing any period of time prescribed or allowed by this

Settlement Agreement or by order of the Court, the day of the act, event, or default from which

the designated period of time begins to run shall not be included.  The last day of the period so

computed shall be included, unless it is a Saturday, a Sunday, or a Legal Holiday, or, when the

act to be done is the filing of a paper in Court, a day on which weather conditions or other conditions have made the office of the Clerk of Court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.

N.     The Settling Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

O.     All Setting Parties agree that this Settlement Agreement was drafted by counsel for the Settling Parties at arm's length and that no parol or other evidence may be offered to explain, construe, contradict or clarify its terms, the intent of the Settling Parties, or their counsel, or the circumstances under which this Settlement Agreement was made or executed. Nor shall there be any presumption for or against any Settling Party that drafted all or any portion of this Settlement Agreement.

P.     This Settlement Agreement, offer of this Settlement Agreement, and compliance with this Settlement Agreement shall not constitute or be construed as an admission by any of the Releasees of any wrongdoing or liability.  This Settlement Agreement is to be construed solely as a reflection of the Settling Parties' desire to facilitate a resolution of the Claims in the Complaint and of the Released Class Members' Claims.  In no event shall this Settlement Agreement, any of its provisions, or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as or deemed to be evidence of any kind in the Action, any other action, or any judicial, administrative, regulatory or other proceeding, except a proceeding to enforce this Settlement Agreement.  Without limiting the foregoing, neither this Settlement Agreement nor any related negotiations, statements or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence or an admission

or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including Defendant, or as a waiver by Defendant of any applicable defense.

Q.      No opinion or advice concerning the tax consequences of the proposed Settlement to individual Class Members or to any of the Settling Parties is being given or will be given by Defendant's Counsel and/or Lead Counsel; nor is any representation or warranty in this regard made by virtue of this Settlement Agreement.  Class Members will be directed to consult their own tax advisors regarding the tax consequences of the proposed Settlement and any tax reporting obligations they might have with respect to it.  Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

R.      The Settling Parties, their successors and assigns, and their attorneys undertake to implement the terms of this Settlement Agreement in good faith and to use good faith in resolving any disputes that might arise in the implementation of the terms of this Settlement Agreement.

S.      The Settling Parties, their successors and assigns, and their attorneys agree to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to use all reasonable efforts to effect the prompt consummation of this Settlement Agreement and the proposed Settlement.

T.      This Settlement Agreement may be signed in counterparts, each of which shall constitute a duplicate original.  Execution by facsimile or email in electronic format (including .pdf format) shall be fully and legally binding on a Settling Party.

U.      All Releasees who are not Settling Parties are intended third-party beneficiaries who are entitled as of the Final Settlement Date to enforce the terms of the Release set forth in this Settlement Agreement.

Agreed to as of this /5ᵗʰ day of August, 2016.

Laurence Rosen
Jonathan Horne
The Rosen Law Firm, P.A.
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827

*Counsel for Lead Plaintiffs Jihong Wang, Qi Li and Les Akio Omori, Plaintiff Alan Beck and the Class*

Ralph C. Ferrara
Ann M. Ashton
Proskauer Rose LLP
1001 Pennsylvania Avenue, N.W.
Suite 600 South
Washington, D.C. 20004
Telephone: (202) 416-5820
Facsimile: (202) 417-6899

Julia D. Alonzo
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-4558
Facsimile: (212) 969-2900

*Counsel for Defendant CFO*